Case 3:24-cv-00301 Document 19 Filed on 05/16/25 in TXSD Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
May 16, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| T.M., | § | |
| Plaintiff. | § § § | |
| V. | § § | CIVIL ACTION NO. 3:24-cv-00301 |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

Plaintiff T.M. seeks judicial review of an administrative decision denying her application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). T.M. and Defendant Frank Bisignano, the Commissioner of the Social Security Administration (the "Commissioner")[1] have both filed briefs. *See* Dkts. 14, 17. After reviewing the briefing, the record, and the applicable law, I reverse the Commissioner's decision and remand this case to the Commissioner for further proceedings consistent with this Opinion.

## BACKGROUND

On May 4, 2021, T.M. filed a Title II application for disability and disability insurance benefits alleging disability beginning March 14, 2020. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that T.M. was not disabled. T.M. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Bisignano is "automatically substituted" as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that T.M. "did not engage in substantial gainful activity during the period from her alleged onset date of March 14, 2020, through her date last insured of December 31, 2023." Dkt. 9-3 at 17.

The ALJ found at Step 2 that T.M. "had the following severe impairments: degenerative disc disease; osteoarthritis of the hands; obesity; Chron's disease, irritable bowel syndrome, and GERD; hiatal hernia; endometriosis of the colon; fibromyalgia; migraine headaches; adjustment disorder with mixed anxiety and depressed mood/depressive disorder." *Id.*

At Step 3, the ALJ found that T.M. "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 19.

Prior to consideration of Step 4, the ALJ determined T.M.'s RFC as follows:

> Through the date last insured, [T.M.] had the residual functional capacity to perform light work between as defined in 20 CFR 404.1567(b), except that [T.M.] could have engaged in no more than frequent handling and fingering. [T.M.] could have been exposed to no more than a moderate level of noise. [T.M.] could have understood, remembered, and carried out detailed non-complex tasks involving detailed non-complex instructions, and she could have no more than occasional workplace changes.

*Id.* at 24.

At Step 4, the ALJ found that T.M. "was unable to perform her past relevant work." *Id.* at 29.

At Step 5, the ALJ elicited testimony from a vocational expert ("VE") that "[t]hrough the date last insured, . . . there were jobs that existed in significant numbers in the national economy that [T.M.] could have performed." *Id.* at 30. Accordingly, the ALJ found that T.M. "was not under a disability, as defined in the Social Security Act, at any time from March 14, 2020, the alleged onset date, through December 31, 2023, the date last insured." *Id.* at 31.

## DISCUSSION

T.M. raises three issues for my review. First, T.M. argues that the ALJ's RFC is not supported by substantial evidence. Second, T.M. argues that the ALJ erred at Step 3 when he found that T.M.'s migraines do not medically equal Listing 11.02 for epilepsy. Finally, T.M. argues that the ALJ erred by failing to properly evaluate her fibromyalgia under Social Security Rule 12-2p. I need reach only the first of these issues.

The record is clear that the ALJ impermissibly interpreted raw medical evidence himself, without a medical opinion, and that this harmful error rendered the ALJ's RFC determination unsupported by substantial evidence. "Raw medical evidence" refers "to evidence that does not permit commonsense judgments about functional capacity and instead requires the ALJ to overstep the bounds of a lay person's competence and render a medical judgment." *Moore v. Saul*, No. 3:20-cv-161, 2022 WL 987735, at *2 (N.D. Miss. Mar. 31, 2022) (quotation omitted). X-ray results are raw medical evidence.

The facts are simple. The staff reviewing doctors, Dr. Douglas Chang and Dr. Kim Rowlands, opined that T.M. could perform a range of light work, but they did not find any additional manipulative or environmental limitations. Notwithstanding the doctors' professional opinions, the ALJ concluded, based on his review of a June 14, 2021 X-ray from the Houston Methodist Clear Lake Hospital Diagnostic Imaging, that "the objective medical evidence in this case

4

demonstrates that the claimant could have engaged in no more than frequent handling and fingering with her upper extremities due to her osteoarthritis in her hands." Dkt. 9-3 at 28–29. The findings and impressions of the X-ray were as follows:

> On the left, there is complete loss of joint space with articular sclerosis and small osteophytes involving the fifth DIP joint. There is mild/moderate joint space narrowing involving the second, third and fourth DIP joints, possibly mild joint space narrowing involving the second through fifth PIP joints. . . .
>
> Similar findings are seen in the right, with near complete loss of joint space involving the fifth DIP joint, also sclerosis and marginal osteophytes. The other interphalangeal joints show mild/moderate joint space narrowing, especially the fourth DIP joint and fifth PIP joint. . . .
>
> There are advanced arthritic changes involving the fifth digit DIP joints bilaterally, otherwise mild/moderate changes involving the PIP and DIP joints of the second through fifth digits bilaterally. The findings are symmetric right to left. Consider osteoarthritis versus nonspecific inflammatory arthritis.

Dkt. 9-9 at 16.

It is undisputed that the June 14, 2021 X-ray results were not considered by the staff reviewing doctors at the initial or reconsideration levels. *See* Dkt. 9-4 (disability determinations at the initial and reconsideration levels do not reflect consideration of the June 14, 2021 X-ray). Although the ALJ recognized that this imaging was not reviewed by any physician, he reasoned for himself—as a judge, not a physician—with little explanation, that T.M. was capable of "frequent handling and fingering." Dkt. 9-3 at 28.

The Fifth Circuit has repeatedly held that "an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). Here, the ALJ had the benefit of the staff reviewing doctors'

medical opinions, but those doctors did not consider the June 14, 2021 X-ray, and the Commissioner fails to even address this discrepancy. *See* Dkt. 17 at 4–6 (failing to even acknowledge, much less address, that the ALJ interpreted raw medical evidence that was not available to the staff reviewing doctors).[2] Accordingly, the staff reviewing doctors' opinion have no relevance to interpreting the results of T.M.'s June 14, 2021 X-ray, and the ALJ is unqualified to interpret those results on his own. "Without reports from qualified medical experts," I "cannot agree that the evidence substantially supports the conclusion that [T.M.] was not disabled because [I am] unable to determine the effects of [T.M.'s osteoarthritis], no matter how small, on [her] ability to perform [light] work [with frequent handling and fingering]." *Ripley v. Chater*, 67 F.3d 552, 557 n.27 (5th Cir. 1995).

T.M. has demonstrated why this error was not harmless. Specifically, the VE "testified that [T.M.] would not be able to do the jobs that she testified about if [s]he had an occasional limitation in handling and fingering." Dkt. 14 at 10. Because the X-ray results could theoretically result in a medical opinion that the ALJ finds persuasive enough to impose an additional limitation on handling and fingering, the outcome here might be different if the ALJ had a medical opinion to interpret the June 14, 2021 X-ray results.

## CONCLUSION

Because the ALJ's decision is not supported by substantial evidence, I reverse the Commissioner's decision and remand this matter to the Commissioner for further proceedings consistent with this opinion. Specifically, the ALJ must either solicit a medical opinion addressing the raw medical evidence that was not considered by the staff reviewing doctors at the initial and reconsideration levels,[3] or sufficiently explain why no medical opinion is necessary.

---

[2] To be fair, even if the Commissioner had addressed this discrepancy, it likely would not have made a difference as post hoc rationalizations are not permitted. *See Chenery Corp.*, 332 U.S. at 196.

[3] This holding does "not require the ALJ to give any specific evidentiary weight to that medical [opinion] or to defer to it because the ALJ may reject the opinion of any physician

A final judgment will issue separately.

SIGNED this 16th day of May 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

when the evidence supports a contrary conclusion." *Graham v. Comm'r of Soc. Sec.*, No. 2:22-cv-00161, 2024 WL 1009538, at *5 (S.D. Miss. Jan. 23, 2024) (quotation omitted).